Your Honor, this case only offers two, 16-0, 3-5-0 people of the state of Illinois, Plaintiff Appellee, and Louis Camacho, defendants of Congress. Arguing on behalf of these defendants of Congress, Mr. James K. Levin. Arguing on behalf of Plaintiff Appellee, Ms. Mary Beth Burns. Mr. Levin, you may proceed. Thank you, Your Honor. May it please the Court. There are three issues that I raised in the briefs, and so I'm going to quickly summarize that. Then I'll go through each issue in chronological order. The first issue is that the evidence was insufficient to support the conviction. It's a reasonable doubt argument. The second argument is that the 9-1-1 tape was erroneously omitted because a foundation had not been established to authenticate the identity of the caller. And the third argument is that the individual and cumulative effect of the various errors in the closing argument deprive the defendant of a fair trial. So with that in mind, I'm going to go ahead and proceed to the first issue, the insufficiency of the evidence issue. Counsel, with your permission, I'd actually prefer to start with the foundation issue. And I had a question with respect to the admissibility of the 9-1-1 recording. Yes, Your Honor. You set out in your brief that certainly the self-identification of Veroa was insufficient to establish her identity, that the dispatcher, Mary Wanach, certainly didn't indicate that she was familiar with the caller's voice, and that the State, in this particular instance, didn't introduce evidence of caller ID. And so, therefore, the State, you argue, was unable to establish a satisfactory foundation. But you do agree, do you not, that circumstantial evidence would be another way that an adequate foundation could be established? Circumstantial evidence that indicates that the individuals would recognize the identity of the caller. So I agree with circumstantial evidence. Right. But I would phrase it in a certain way, probably different than the way the State may phrase it. All right. And so in looking at what we – well, what would that circumstantial evidence have to look like here to have made an adequate foundation? Well, I believe that the trial court's reasoning was erroneous as a matter of law. So I have argued for a de novo standard of review on this issue. And the State did not challenge my arguments in that respect. And I'd like to explain why I would argue for that. Well, I think that was going to be another question I had. But if you want to start with that, that's fine. Why would it not be abuse of discretion? And what authority would you have for a de novo with this? People v. Caffey, it's an Illinois Supreme Court decision, and I cite it in the briefs. And basically, in that case, if the court – the trial court's reasoning is based on a flawed legal premise, then the de novo review would be called for. And I'd like to explain why I think the trial court was not just simply – the charge of this reason wasn't simply faulty. They relied on a faulty premise. What was that flawed legal premise? Because they relied on the 911 tape to establish the invisibility of the 911 tape. So the trial court's reasoning was circular. They relied on information either in or related to the tape. Isn't that correct? In the tape, yes. They relied on information in the tape. But in order to rely on information in the tape, they would have to – the judge would have to find that the tape was admissible. Why is that? Because – In order – well, go ahead. Let me let you finish. And I didn't see a response to that in the state's brief, so I pointed that out in my reply that the state didn't respond. But I'd like to hear your – because I'm not sure I followed that. Okay. So the 911 tape, the caller identified herself as Mrs. Camacho. She identified the defendant by name, identified that the defendant was her husband, and said that the defendant had grabbed her by the throat. So the trial judge of the state made arguments at the trial court level that that information should be relied on to establish the invisibility of the 911 tape. But that's not admissible yet. But what evidence do we know that corroborated that information in the tape? We know, do we not, that the police responded to this address very quickly, within minutes, and found a person there who identified herself as Miral Camacho. Isn't that correct? Yes. And they found a man, the only adult man in the house, whose name was Luis Camacho, the name that she gave for her husband. Do we not know that? So even just stopping there, and we have more, why – I mean, what else would the trial court look at? Well, the trial court looked at Part A and Part B. I think Your Honor is referring to Part B. I'm referring to Part A, which is an illegal premise. Well, what would they refer – in ruling on any admissibility, you have to look at the item that's going to be admitted, and within some context. I don't know how this is different, necessarily. Why? What is wrong with – if the court only relied on the information in the tape itself and said, what I heard was sufficient, well, I would agree that that wouldn't be. But there is evidence outside the tape that is circumstantial that corroborated who was – who the caller was. And the caller on that tape self-identified herself. That's what our issue is. Right? That's the problem. That can't be. So is there other information the court looked at that could circumstantially establish who the – or what the identity of the caller was? Isn't that the question, counsel? Yes. Okay. But I'd like to respond to it, please. You see, I think the scenario that Your Honor's outlining is where maybe the trial judges relied on what the police learned in their investigation. But the trial judge did not limit his reasoning to that scenario. The trial judge specifically relied on the 911 tape as evidence to find the admissibility of the 911 tape, along with what happened with the police officer's investigation. So they – Well, we're still – yes, go ahead. So what I – my position is, and I didn't have a chance to reply to any rebuttal arguments to this, but the trial judge relied on an illegal premise called for de novo review. And assuming for the sake of argument what Your Honor's outlined in terms of the police investigation, and not necessarily many, but let's assume for the sake of argument a legal premise. So the judge's reasoning is faulty in arriving at the result because in part he substantially relied on an illegal premise to get to the results he relied on. But we look at, as an appellate court, we look at the ruling, not necessarily the reasons for the ruling. We can affirm on any basis in the record. Isn't that correct, counsel? The court can affirm on any basis in the record. However, you know, the trial judge specifically talks about this idea, concept, in the Caffey case. Is a trial judge errors if it relies on an illegal premise to get to a certain result? And how would the judge have ruled if he was only relying on what happened with the police investigation and excluded completely the 911 tape? But moreover, I'd like to point out another thing, too, and that is, I mean, no witness got on the witness stand and identified the caller as Mrs. Camacho. And are you saying that's what's required? That's what would have been required for somebody to get on the witness stand and identify her as the caller? Well, I would argue it's a double-pronged attack. I mean, I would request the court consider my illegal premise arguments, and that would be the first argument. And the second argument would be that, you know, unlike the cases that were discussed in the briefs, my position is the state did not establish directly or circumstantially that there was any witness who testified inferentially that they could identify the caller's voice. So that is my concern about this problem, about this issue. There's no – I recognize circumstantial evidence can be used, but there's – circumstantial evidence has to be based on a reasonable inference. And there's no reasonable inference on here that any witness that testified at trial knew the identity of the caller as Mrs. Camacho. Certainly the police have no basis circumstantially, or there's no inference that the police could identify the caller on the 9-1-1 caller. Nor can Mary Winnick. There's no reasonable inference, no circumstantial evidence that she could identify the caller either. Isn't that similar, though, to Edwards? That in Edwards, there was nobody who – no one who could identify the caller, per se. There's no direct evidence. There was circumstantial evidence people saw the caller or saw a person at a phone booth in a similar timeframe. Well, I think in Edwards – and I apologize, I'm not – I have – I listened to the fact pattern that Your Honor articulated, and I think that pattern is a lot different than here because in that case, as Your Honor described it, there is circumstantial evidence that the witnesses can make a reasonable inference based on the circumstances that the identity of the caller is a specific individual. But here, the police have no basis to know directly or circumstantially, by reasonable inference, that the caller of the 9-1-1 caller was Mrs. Camacho. So normally, the 9-1-1 operator – the 9-1-1 operator can make a reasonable inference that the identity of the caller is Mrs. Camacho. She has no experience and no relationship and has nothing – no knowledge whatsoever about the circumstances of the case. Why did the police go to this location? Because of – they went to the location because they got a call to go to the – they got a message from Mrs. Winick to go to that address. Were there any other adult females in this apartment? We don't know. There was one adult female. We don't know if there were others. All right. There's a 2-year-old that's apparently awake. Yes. Around – do we know that that 2-year-old, who happens to be a girl, did she make the call? Could she have made the call? No, I don't think we could make that inference that she made the call. But we don't know – we don't know all the circumstances because there were no eyewitnesses that actually testified at trial. But we don't know if there's possibly anybody – any other persons that were at the home. We don't know that. The information is pretty sketchy because we don't have any eyewitnesses that actually testified at the trial. So the evidence is quite lacking in that regard. We do have an eyewitness who arrived at the home and saw a man dressed as was identified on that phone call, correct? It was a police officer. He saw a man who was dressed in gray jeans and whatever that jacket was, I can't remember, or top. And that's what she identified on the tape, correct? She – well, as I recall on the tape, and I did take some notes on it, and forgive me if I'm not remembering correctly, but I remember on the tape that there wasn't a lot of detail that the caller communicated. I think she did mention that the person grabbed her by the throat, but there's not a lot of detail in that 911 call. So I don't recall. I don't recall that specific fact. She was asked certain questions. What's your husband's name? Does he have a middle initial? What's he wearing? What's his date of birth? She didn't volunteer any of these things. These were asked of her, and she answered them. And when the police officers got there, didn't they identify a person with that name, with that date of birth, and with the clothing items that she had identified? Well, the police had testified to that, but it's not a firm, established fact that that happened. Well, if they testified to it, it is a firm, established fact, is it? No, because the police were not there when the alleged incident occurred. But the police testifying to his name, his middle initial, his date of birth, his clothing, that's all established by the police officers testifying to it. Yes, she saw what they observed, his clothing, of course, but they don't have any knowledge of who was at the apartment when the incident occurred, because they're certainly not eyewitnesses. We're still trying to authenticate. We're at that argument, although it does flow into the beyond the reasonable doubt argument. Yes, and I'll just quickly cover that. I'm just concerned about my time, and I really do would like to cover that third issue. It's extremely important, too. Well, if you want to cover that instead or have that on reply, because I'm sure Ms. Burns will... I'd like to cover the third issue then right away. Right, quickly. So the third issue is there's a lot of prosecutorial comments, which I believe is either the individual accumulative effect, deprive a defendant of a fair trial, and there were appeals to emotion made, and the Supreme Court has condemned those types of arguments. For example... One of the cases, for example, you cite is People v. Hope, 1986 Supreme Court case, where the Supreme Court did hold that comments made about family members of victims were improper when the only person was to arouse the passions of the jury. Here, well, in Hope, we have to note that the children were mentioned four times. There were photos that were introduced of the children. The court even commented that the remarks about the children were not invited. Well, we have a very different situation in this case, do we not? Because here, the prosecutor commented on the evidence as well, that the jury should comment in meaning in argument, which of course isn't evidence, but should convict even without the children's testimony because it heard evidence of the 9-1-1 recording. Certainly, the comments here were invited, so that's very different than the Hope case, where they were not invited. I mean, defense counsel did talk about why, you know, didn't the children testify in something with respect to Morella, because the defense counsel did argue or talked about question why the jury didn't hear from the children. That was not a rebuttal argument. My argument, and I implied this in my reply brief, that the state's comment was not invited, and the reason I propounded for that is the defense counsel commented that the 15-year-old was not a witness who testified at the trial, but what the state is, they didn't respond to that argument saying that our evidence is sufficient despite that deficiency. What they argued is much, much broader. What they did is they said that they blamed the defendant for allowing these children to witness an act of alleged domestic violence, and that's a very emotional argument. And I also cited People v. Wheeler, the Illinois Supreme Court case, which says arguments that are made to arouse passion that aren't made with a logical and reasoned argument why the defendant is guilty beyond a reasonable doubt. Those kinds of arguments are condemned. The state cannot try to appeal to the jurors' emotional opposition to domestic violence. They have to make the judgment based on Mr. Camacho's guilt or failure to prove guilt beyond a reasonable doubt. The defense counsel said, why isn't the 15-year-old there, not here, and also said, why aren't the children here? One of those children was 2 years old. Who's trying to evoke emotions now? I don't see that as an emotional argument. It's that there's no eyewitnesses to the case. What's the 2-year-old going to come in there for? I'm sorry? What's the 2-year-old going to come in there for? To sit on mom's lap and cry? Well, what the state did was broaden the argument and direct it to something other than what the defense counsel said because the state was saying that you should care about the case. That's a quote. If you don't care about this case, you should care about the children who saw what happened. That's what I believe the comment was. You say to the jury, the jury should care about what happened to these children, and I think that's an improper argument because what it's attempting to do is show that the defendant is a bad person deserving of punishment because he made his own children victims in this situation. And that's a very emotional argument in a very closely balanced case that can tip the scales. What the state should have done is confined its argument to a reasoned, logical argument why the defendant is guilty but not appeal to emotions and say that the defendant should be convicted because he's an evil person allowing his own children to have witnessed this alleged event. So that fits right within the rubric of People v. Whelan where the illustrative Supreme Court came out very vigorously against comments directed to emotions. So I like it. And there is another case besides Hope, and that's People v. Clark, which is a non-capital case, which I cited, that dealt with emotional arguments, not a capital case. The second comment. Well, counsel, you'll have a chance to respond. We've gone far over time. Okay, thank you, Your Honor. You're welcome. Ms. Burns? Good morning, Your Honor. May it please the Court. My name is Mary Beth Burns, and I represent the people of the state of Illinois. We come before you this morning to respectfully ask this Court to affirm Mr. Camacho's conviction for misdemeanor domestic battery. With your permission, I'd like to discuss the first issue that the Court discussed, which was the foundation, and apologize for not clarifying the defense argument on the standard of review. I apologize. It apparently just whipped right past me. I think whether one looks at this under abusive discretion, which would be the normal standard for evidentiary claims, or if one looks at it de novo, the trial court's ruling should be affirmed because the law, as we cited, says that things can be authenticated through circumstantial evidence. Under the defense position, a 911 tape could never be admissible because in a normal metropolitan area, there's no reason to believe that a 911 operator would recognize the voice of a person calling in. Unless, of course, the person calling came in and admitted that that was the call. Right. But is that required? No. Again, you have a great deal of law which talks about we look at the surrounding circumstances. And here, as I think was discussed during counsel's argument, the surrounding circumstances which were elicited through Ms. Winick, the operator, included the caller's name, the name of the person she was accusing, his birth date, his attire, and that there were children in the house. Each of those things was verified through the testimony of the officers. And the trial court actually had one of the arresting officers come in outside the jury to do an initial examination to determine that these things were in fact present before it determined that the tape would be admissible. And did it actually get admitted as a matter of the procedure in the trial? It got admitted just like immediately pre-trial because there was a significant amount of motions practice on it leading up to it. I say pre-trial, but I suppose it's trial because the witnesses were there and they called the arresting officer to testify. But my recollection is that that testimony was outside the presence of the jury. The jury did not hear that testimony. Right. That's my recollection. But the jury had been impaneled. Right. And so it's, I guess, like immediately pre-trial or at trial because there was a witness who testified. But again, the decision was made before the rest of the evidence was presented. And it was made outside the presence of the jury. And it was made after a significant amount of motions practice. And when the defendant testified that that was Morella on the tape, it had already been introduced. Yes. And we talked about in our brief that he had said, yes, that was her and that he was there. I recognize as a proponent it was the State's burden to present sufficient evidence, and he not testified that that verification would not have been available. Absent that verification, the trial court heard significant evidence in support of the admission of the tape. So we believe that the trial court's ruling should be affirmed as to that. As to the second issue that was raised, which is the plain error issue, we submit and continue to believe that none of the claims rise to plain error. Because – I'm sorry, Your Honor, you look like you want to say something. Was there error? Was there error in the first place with respect to – I don't believe this error was demonstrated. Okay. And that for a plain error analysis, a demonstration of error has to be the threshold concern. And with respect to the argument about the children that counsel discussed, why – The discussion by the prosecutor did not call them victims, did not appeal to the juror's emotions. But the prosecutor said, Morella is not here, but we'd like you to listen – we care about this case because the children were. That was the extent of it. It didn't go into children's suffering, which I think was the discussion involved. It didn't go into the children as victims. But it went into the circumstance of – it did go into the circumstance that the children saw what happened transpired between the parents. Well, the prosecutor also added the comment about maybe the 2-year-old isn't here to come in and testify as to what happened. I mean, that certainly was sarcastic or tongue-in-cheek or perhaps unneeded or unartful. Unartful. Unartful, I believe. But as you said in your brief – Yes, I definitely think some of the things were unartful. But they didn't rise to the level of error? I don't believe so. For a plain error? And assuming that you had a minimal error, the trial court's instructions were the last things that the jurors heard. And the trial court emphasized more than once that the statements made by the attorneys were not evidence, that they were to disregard anything that was not evidence. The trial court very carefully instructed the jurors, and so any – you know, we always assume the jurors follow their instructions. And so we have to assume that they disregarded anything that was not evidentiary. And again, the types of comments that are complained about are not the types of comments that appear in the cases at defense sites. None of these things is Murray Blue. None of these things is Hulk. None of these – you know, and again, this is unartful. We were talking about the fact, and I admit, whining while I was doing this case that this was an over-tried misdemeanor. But I constantly – I constantly whine that many cases are not well-tried. So having a misdemeanor over-tried teaches the prosecution and the defense to, in fact, put on a case. I think that's what was going on here as to both sides. And both sides – Let me ask you this. Did the – was this an isolated comment by the state's attorney, or was it – did he dwell on the victim's family repeatedly? No. Was this the only time, or was there even one other time? I do not believe – I do not remember that – the record that carefully. However, I did not recall a great deal of emphasis on the victim's family in the presence of them. And I could be wrong. I have not seen the record recently, but – Because that could make a difference, correct? Yes. If it was a repeated reference to the family, to the children, whatever. My recollection is that both arguments were somewhat short, and so I don't think there was a great deal of repeated emphasis from either side on any of the issues. Was it a material part of the prosecution argument like it was in the Burnett case? No. Again, the material – the material part of the prosecution's argument was that the nine – and you have the 9-1-1 tape. But, again, neither of the arguments were particularly long. And the prosecution – my recollection of the prosecution's argument is that it was primarily based on the reliability of the 9-1-1 tape. When counsel was discussing the closing arguments in the context of plain error, he included in a couple of his remarks that this was a closely balanced case, that it was a first-prong case, although I also have a question for him on reply because he also talks about it as a second-prong case. But is this a closely balanced case? No. Why not? It's only a closely balanced case if you disregard the police officer's testimony and the content of the 9-1-1 tape. Absent those two situations, it's not a closely balanced case. Did the – when did the jury find out that the parties were either engaged in divorce or were divorced? I honestly don't remember. The defendant testified to it, and I can't remember if it was on cross or if it was on redirect. But it was – it came from the defendant. I believe so. So the comment that why she may not be here, which appears to be quite short in terms of this argument, and in response to the fact that the defendant argues, well, nobody's here, could be considered in light of the testimony that they were getting a divorce as well, correct? It could be. And there is evidence that they weren't even living together at the time of the trial. Isn't that correct? Yes, Your Honor. Your Honor, do you have any more questions? Well, what about the credibility of a police officer versus the credibility of anybody else? That's entirely – that's entirely the role of the trier of fact. Whether the – and I think what's interesting, though, is you had a split verdict here because one of the police officers did not even consider Mirella Camacho to be distraught. He said that she was quiet and the one – he was the one who took pictures and he saw no injuries on her, just slight redness. And so I think that based on what was presented, it was a matter for the trier of fact to determine whether they believed the defendant's version of the events or whether they believed the police officer's version of events. Did the prosecution improperly bolster the testimony of the police officers during their closing argument? No. Was it like Ford – I mean, in Ford, the comments there by the prosecutor directly talked repeatedly about a police officer's integrity, impeccable credentials, and other adjectives to describe them not only as police officers but as people. Was that what was done here? My recollection is what was done here, which was I think in one paragraph, was say, okay, we're looking – you have to judge the credibility. We're looking at the defendant. We're looking at the police officers and why would they lie? They're just here doing their jobs. Beyond that, I don't think he talked about them as sterling members of the community or protectors of the community or anything like that. I think he basically said they're just doing their job. And that being the case, it seems to me that while no higher court has told us or I think told you that prosecutors can't say who had no reason to lie, and that's a phrase that was used here, that police officers have no reason to lie, maybe take back to your constituents that, you know, they were doing their job. That, I think, says what needs to be said. They were talking to people. They came in to testify. They were doing their job. I think that's very true. Thank you, Your Honors. Thank you. Mr. Levin. Thank you. Your Honor, I have a short five minutes, and I want to cover the questions that the court raised to the State and try to address as much as I can in the next five minutes. So I'm going to go as fast as I can. You were here when I talked about a single-space brief. Don't talk that fast. Well, it's hard for me to talk that fast. Okay. So when I talk fast, it's usually slow. So I argued the individual and cumulative effects. I'm not just talking about one error in isolation. I'm talking about four errors altogether and the cumulative effect of those errors. As far as whether the evidence is closely balanced, I think this case fits within that. There's no eyewitnesses that testified at the trial. The 9-1-1 tape itself was not subject to cross-examination. It was not done under oath. The defendant denied the allegations. He took the witness stand. The jury acquitted the defendant of one charge but convicted him of the other charge. I think all those factors show that the evidence is closely balanced. So as to the four comments, I'd like to address, Your Honor, Justice Spence's question about whether the first comment was isolated or whether it was repeated. It's my position that it was repeated. It did take one paragraph, about half a page or three-quarters of a page of the transcript, but the State repeated and hammered that point home that the children saw this, that the defendant is to be blamed for allowing his children, young children, 15 and 2 years old, to witness these events. So it wasn't isolated. It was flagged. It was repeated. It was done intentionally. Now, that was in response to the defense attorney arguing or asking why other witnesses weren't present, correct? The children, the wife, and so forth. Well, the defense counsel, my position is that the State brought in the argument. It wasn't just the defense counsel made an argument as to the sufficiency or the insufficiency of the evidence, but the State responded in a rebuttal when the defendant had no chance to respond, which brought in the argument to an emotional appeal that the defendant should be convicted because he allowed his children to see it. And sometimes comments that are implicit have a more powerful punch than arguments that are necessarily explicit, and the State's attorneys understand that. So I think when I read it, I think a reasonable person would read it if they understand exactly what the State was trying to do. And just because, you know, there wasn't excruciating detail going into four pages, the implicit argument is that the defendant is bad. He should be convicted because he allowed his children to see alleged domestic violence. Now, as to the second comment, police officers should be believed. They don't have any motive to lie because all they're doing is filling out police reports, interviewing witnesses. I think that comes within the rubric of those cases that I cited because the State is attempting to bolster the credibility of the police officers because the police officer is just doing the job, as the prosecutor said, filling out the police reports and interviewing witnesses. That's an improper comment to try to bolster the police officers. The third comment, the State said that you should disbelieve Mr. Camacho, quote, because he was charged with domestic battery. Well, that undermines the presumption of innocence. The defendant's entitled to be, if he's going to be found guilty, he has to be proven beyond a reasonable doubt. He's to be presumed innocent. Filing a charge, and the State used that term, charge, does not mean that, you know, he should be found guilty just because the State charged him. And it doesn't believe that the police officer should be believed over the defendant. It should be a reasoned, logical analysis of why the police officer should be believed over the defendant. There's no place in the argument to say that the defendant should not be believed because he was charged with a very emotional offense like domestic battery and that the police officer should be believed just because all they're doing is doing their job interviewing witnesses. The fourth comment is a very important one, I ask the Court to address that, and that is that the State suggested, quote, why would a victim not show in a domestic violence case? One reasonable person reading that struck me when I was reading it. That means that there's an implied argument there, which is as powerful as an explicit argument, that the defendant, that the complaint of Mrs. Camacho did not show up because the defendant was intimidating her, but there's absolutely no evidence of it. There were other inferences that could have been drawn from that as well because the jurors also heard testimony that they were in the middle of a divorce or had been divorced. So certainly that was a fair inference as well. If I may ask for Lee just to respond to that question, and this is an important point. The State put in its brief, and the State argues my position basically, and I'd ask the Court to read the State's brief, not just mine, but the State made an argument in its brief that Illinois courts have recognized that domestic violence is a type of crime that's susceptible to intimidation of the victim to ensure that the victim does not testify against the abuser. This is what the State wrote. So the prosecutor's comment may have been directed at a common concern in these cases. Well, that's what struck me, and I think a reasonable, rational juror would come to the same inference, that she didn't show up to court because he's a bad guy, he's an abuser, he abuses women, he's intimidating her, and that's why she didn't show up to court. And that gets away from the issue talked about in Wheeler and emphasized very strongly in that case that it's repeatedly been condemned that prosecutors should not make appeals to emotion, should direct their comments to a reason, argument, whether the defendant has been proven guilty beyond a reasonable doubt. Thank you very much, Your Honor. Thank you. All right. Counsel, thank you both for your arguments this morning. We will take the matter under advisement. We'll be on a brief recess to prepare for our next case.